**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

2401 WALNUT, L.P.,

                Plaintiff,

    v.

AMERICAN EXPRESS TRAVEL
RELATED SERVICES COMPANY,
INC.,

                Defendant.

Civ. No. 07-1281

**MEMORANDUM**

January 23, 2008

Before the court are the parties' cross-motions for partial summary judgment

(Docket Nos. 26 and 30).  Plaintiff, 2401 Walnut L.P., owns a building that it leased to

defendant, American Express Travel Related Services Company, Inc. ("American

Express"), pursuant to a commercial lease that is now terminated.  Plaintiff contends that

American Express breached the lease by failing to remove certain items of its property

from the building.[1]  American Express argues that it need not remove the items because

they are fixtures of the building that were installed prior to commencement of the lease.

For the reasons that follow, plaintiff's motion will be denied and defendant's cross-

motion will be granted.

---

[1] This court has diversity jurisdiction over the action pursuant to 28 U.S.C. § 1332.

## **Facts**

Plaintiff owns an office building at 2401 Walnut Street, Philadelphia (hereinafter the "Building").  Defendant American Express was once plaintiff's tenant in the Building under the terms of a commercial lease that commenced on October 1, 2003 and is now terminated.  The parties entered this lease pursuant to an agreement wherein American Express agreed to purchase the stock of the building's then-owner, Rosenbluth International, Inc. ("Rosenbluth").

The Building once served as Rosenbluth's company headquarters.  On July 11, 2003, American Express entered into a Stock Purchase Agreement ("SPA") with Rosenbluth for the purchase of all shares of Rosenbluth stock.  The SPA provided that certain of Rosenbluth's assets would be excluded from the purchase, and that Rosenbluth would transfer these assets to a third party prior to the closing.  SPA § 5.8.  Among these excluded assets was the Building, though American Express would acquire the  "tangible property located in the building":

> Prior to the Closing, [Rosenbluth] shall take all reasonably appropriate and necessary action to dispose of or transfer the following assets of the Company [Rosenbluth] effective as of the Closing Date and to transfer or to discharge the related liabilities . . . : the real property (land and building) for the Company's headquarters located in Philadelphia, PA, including the adjacent parking lot (the "Headquarters"), but not the computers, equipment and other tangible property located in the building, which Headquarters shall be transferred to an assignee or transferee who agrees to enter into a lease agreement, dated as of the Closing Date, in the form of Exhibit 7.1 (xiii) attached hereto (the "Headquarters Lease Agreement") and obtain any consents related thereto . . . ."

SPA § 5.8.  The closing was completed on September 30, 2003.

-2-

As required by the SPA, Rosenbluth transferred the Building to a third party, plaintiff 2401 Walnut L.P.  The transfer, as described in the deed, included the Building "and improvements thereon erected."  *See* Deed.  Plaintiff entered into the "Headquarters Lease Agreement" with American Express that is referenced in § 5.8 of the SPA.  This lease required that American Express, at its own expense, remove all items of its property from the Building upon termination of the lease:

> Tenant shall at the expiration or earlier termination of this lease or of Tenant's right of possession, also remove from the Building all furniture, trade fixtures, office equipment and all other items of Tenant's property so that the Landlord may again have and repossess the Building. . . .  Tenant shall repair, at or before the expiration or termination of this Lease or of Tenant's right of possession, all damage done to the Building or any other part of the Building by installation or removal of furniture and property by Tenant . . . .

Lease § 6(b).  The lease further gave plaintiff the option to assume possession of any "fixtures" that American Express attached to the Building, or to require American Express to remove them:

> All alterations, additions or improvements made by Tenant and all fixtures attached to the Building shall become the property of Landlord and remain at the Building, or, at Landlord's option, any or all of the foregoing shall be removed at the cost of the Tenant before the expiration or sooner termination of this lease and in such event Tenant shall repair all damage to the Building caused by the installation and/or removal thereof.

*Id*. § 8(b).  The lease went into effect October 1, 2003 and terminated October 30, 2006.

The following items, now the subject of this action, were installed in the Building prior to commencement of the lease:

> (1)[K]itchen fixtures and signage (including, without limitation, equipment, plumbing, and grease traps), (2) "Continuum" trade space and all specialized

rooms (including ceilings, walls, flooring and signage), (3) customized trade spaces (including, without limitation, data room, theater, and network operations center), (4) customized components (including, without limitation, halon fire system), (5) satellite dishes, projection equipment, screens and other related equipment, (6) metal rods left in building where signage for Rosenbluth International was removed by Tenant, (7) customized fixtures in basement including a gym and lockers, (8) signage throughout building including wall name plates, (9) piping from water purification systems on each floor, and (10) superfluous cabling and wiring that runs throughout the building.

Am. Compl. ¶ 11; Block Decl. ¶¶ 7, 10.  Despite plaintiff's requests that it do so,[2] American Express did not remove the above-listed items from the Building when the lease ended on October 30, 2006.  In March 2007, plaintiff filed suit for breach-of-the-lease in the Philadelphia Court of Common Pleas.  Plaintiff alleged that defendant failed to satisfy its obligation to leave the building in satisfactory condition, and failed to remove the above-listed items from the Building and repair any damage caused by their removal.  American Express removed the case to this court pursuant to 28 U.S.C. §§ 1441 and 1446.  The parties now present cross-motions for partial summary judgment on the question whether American Express breached the lease by failing to remove the above-listed items (the other claims in the complaint are still at issue in this litigation).

_____

[2] On October 26, 2006, Charles X Block (formerly the Vice-Chairman of Rosenbluth), writing on behalf of Bedrock Group LLC, the sole general partner of plaintiff 2401 Walnut L.P., sent a letter to American Express.  The letter stated that, pursuant to the lease, Block was requiring that American Express remove a number of items in the Building, some of which the letter identified in general terms.  In response, American Express sent a letter on December 4th, 2006 stating: "We have not installed any alterations, additions, improvements or fixtures in the Property.  As such, we have no obligation to remove improvements in the property that existed in the Property prior to the commencement of our tenancy therein."  On December 12, Mr. Block sent a letter in response that again requested removal of certain items, and listed those items as they now appear in paragraph 11 of plaintiff's amended complaint.  On February 14, 2007, Mr. Block sent a contractor's estimate of the cost of removing those items.

**Legal Standard**

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). "If the moving party successfully points to evidence of all of the facts needed to decide the case on the law short of trial, the non-moving party can defeat summary judgment if it nonetheless produces or points to evidence in the record that creates a genuine issue of material fact." *El. v. Se. Pa. Transp. Auth.*, 479 F.3d 232, 238 (3d Cir. 2007). The absence of "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" establishes that there is no genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The court views the evidence in the light most favorable to the non-moving party, drawing all "justifiable inferences" from the evidence in the nonmovant's favor. *Id.* at 249.

**Discussion**

Pursuant to the lease, American Express was required to "remove from the Building all furniture, trade fixtures, office equipment and all other items of *Tenant's*

*property*" at the termination of its tenancy.  Lease § 6(b) (emphasis added).  This category of property includes "[a]ll alterations, additions or improvements made by Tenant and all fixtures attached to the Building."  *Id.* § 8(b).  Plaintiff argues that American Express breached these terms by failing to remove the disputed items from the Building.

These items were in the Building when it served as Rosenbluth's company headquarters, prior to commencement of American Express's tenancy.  However, pursuant to the Stock Purchase Agreement ("SPA"), Rosenbluth transferred "the real property (land and building)" of Rosenbluth's headquarters to plaintiff, "but not the computers, equipment and other tangible property located in the building."  SPA § 5.8.  Plaintiff contends that the items in dispute are among "the computers, equipment and other tangible property located in the building" that American Express acquired through its purchase of Rosenbluth.  Thus, plaintiff argues, the terms of the lease require that American Express assume responsibility for their removal.

American Express contends that the items are not among those it gained pursuant to the SPA, but instead were "fixtures" installed by Rosenbluth and thus were part of the Building when it was transferred to plaintiff.  The lease requires American Express to remove fixtures that it installed during its tenancy, but does not transfer ownership to American Express of items that are part of the Building.  Thus, American Express argues, because the items are constitutive of the Building now owned by plaintiff, the lease's terms do not make American Express, the tenant, responsible for their removal.  In

-6-

response, plaintiff argues that, under the terms SPA, American Express acquired the items regardless of whether they were fixtures, and, alternatively, that the items are not fixtures.

Plaintiff does not contest that American Express must remove the items only if, under the terms of the SPA, American Express acquired them from Rosenbluth.  As plaintiff recognizes, there are two scenarios under which American Express would have acquired the items.  First, if the SPA required that Rosenbluth transfer fixtures of the Building to American Express, while transferring the remainder of the Building to a third party, then American Express owns the items.  Second, American Express owns the items if they were not, in fact, fixtures of the Building when it was transferred to plaintiff, but simply "tangible property located in the Building."  SPA § 5.8.  Pursuant to the choice-of-law provision of the SPA, § 11.4, these questions are resolved according to New York law.[3]

**A.**

The court first finds that American Express did not undertake to acquire from Rosenbluth any items that qualified as "fixtures" of the Building.  Under New York law,

---

[3]  The SPA states: "This Agreement shall be governed by and construed in accordance with the laws of the State of New York without giving effect to any choice or conflict of law provision thereof."  SPA § 11.9.  In order to determine whether, under the terms of the SPA, American Express agreed to acquire the disputed items, the court must resolve the question whether the items were, under New York law, fixtures of the Building when the SPA was executed.

Plaintiff argues that the lease should also be interpreted according to New York law.  The court need not address this contention for the purpose of resolving the instant motions.

"[a] fixture is defined as any article of personal property which has become so affixed to the land that it becomes part of it." *J.K.S.P. Restaurant, Inc. v. Nassau County*, 127 A.D.2d 121, 130 (N.Y. App. Div. 2nd Dep't 1987) (citing 23 N.Y.Jur., Fixtures § 1 (1st ed.)).  However, "it is well settled that in many cases, general and otherwise controlling principles may be avoided by agreement and the character of personal property as such be maintained in spite of circumstances which without such agreement would turn it into real property." *People ex rel. Interborough Rapid Transit Co. v. O'Donnel*, 202 N.Y. 313, 319 (N.Y. 1911)*; see also* 59 N.Y. Jur. 2d Fixtures § 8 (2d ed.) (citing *Interborough*).  The Uniform Commercial Code, as adopted in New York, recognizes that a good attached to realty may be severed from the realty and separately sold "even though it forms part of the realty at the time of contracting."  § 2-107(2).[4]

In the instant action, however, there is no evidence supporting plaintiff's contention that American Express agreed, through its purchase of Rosenbluth, to acquire fixtures of the Building.  The SPA expressly required that Rosenbluth transfer the

---

[4] The provision states:

> A contract for the sale apart from the land of growing crops or other things attached to realty and capable of severance without material harm thereto but not described in subsection (1) or of timber to be cut is a contract for the sale of goods within this Article whether the subject matter is to be severed by the buyer or by the seller even though it forms part of the realty at the time of contracting, and the parties can by identification effect a present sale before severance.

N.Y. U.C.C. § 2-107(2).

building at 2401 Walnut to a third party, but that American Express would take possession of "computers, equipment and other tangible property located in the building." SPA § 5.8.  This clause did not, of itself, transfer to American Express items that, at the time of the SPA's execution, had been "so affixed" to the building that they became "part of it." *J.K.S.P. Restaurant, Inc.*, 127 A.D.2d at 130.

The SPA otherwise makes no reference to "fixtures" or to any other provision that would make clear that American Express assumed responsibility for fixtures.  Plaintiff argues otherwise, drawing the court's attention to the "Closing Balance Sheet," and related financial statements, delivered in connection with the SPA.  The Closing Balance Sheet was created by an independent auditor, KPMG, pursuant to the SPA's requirement that Rosenbluth  "prepare . . . and deliver to [American Express] a consolidated audited balance sheet of [Rosenbluth] as of the Closing Date . . . , presenting fairly in accordance with GAAP, in all material respects the consolidated financial condition of [Rosenbluth] and its Subsidiaries as of the Closing Date." SPA § 2.5.  In listing the value of "property and equipment" owned by Rosenbluth, the balance sheet lists "furniture, fixtures, and equipment" separately from "land, building and leasehold improvements."  Closing Balance Sheet at 6 n.3.

However, as American Express correctly argues, the Closing Balance Sheet was created to present the "consolidated financial condition" of Rosenbluth at the time of the company's sale to American Express, and does not purport to define the scope of that

sale.  Moreover, because the Closing Balance Sheet was drafted by an outside auditor, it

does not illuminate  the parties' intent in agreeing, in the SPA, that American Express

would acquire "computers, equipment and other tangible property located in the

building."[5]  Plaintiff attempts to demonstrate otherwise through a declaration of Jeffrey

Petrik, a Vice President of Rosenbluth whose duties included "organizing, reviewing and

----

[5]  Plaintiff argues that the Closing Balance Sheet is part of the SPA, and thus probative of the parties' intent in § 5.8 of the SPA.  This argument is grounded on plaintiff's contention that, as a "transaction document" delivered in connection with the SPA, the Closing Balance Sheet is part of the SPA itself.  The SPA contains a comprehensive set of definitions comprising its section one.  This section defines "Transaction Documents" to mean "all of the agreements, documents, instruments and certificates contemplated by this Agreement or to be executed by a Party in connection with the consummation of the transactions contemplated by this Agreement . . . ."  SPA § 1.141.  The Closing Balance sheet clearly falls within the scope of this meaning.

Plaintiff argues that, "because the Closing Balance Sheet is a 'Transaction Document,' it is also part of the Stock Purchase Agreement pursuant to Section 11.4 . . . ."  The provision plaintiff cites in support of this argument is the SPA's integration clause, which states:

> This Agreement (including the Schedules and Exhibits), together with the Transaction Documents (when executed and delivered) and the Confidentiality Agreement constitute the entire agreement among the Parties with respect to the matters set forth herein and supercedes any prior (written or oral) contemporaneous understandings, agreements, or representations by or among the Parties to the extent they relate in any way to the subject matter hereof.

SPA § 11.4.

Plaintiff appears to argue that, because the "Transaction Documents" constitute part of "the entire agreement among the Parties," those documents are defined as part of the SPA.  This argument fails according to the terms of the integration clause, which identifies an "Agreement" document that is distinct from the "Transaction Documents."  It is clear from the definition section of the SPA that "Agreement" is a referent for the SPA itself.  This section defines "Agreement" according to "the meaning set forth in the preface," *id.* § 1.4, which in turn identifies the "Stock Purchase Agreement" as "this 'Agreement.'"  SPA Preface.  The court thus rejects plaintiff's argument.

compiling the expenditures for furniture, fixtures and equipment."  Petrik Decl. ¶ 1.  Mr.

Petrik states that the "fixtures" listed in the Closing Balance Sheet "should have been

based on information provided by [Rosenbluth] to KPMG."  *Id*. ¶ 4.  However, Petrik did

not participate in creating the Closing Balance Sheet, and states that he "was not working

at [Rosenbluth] when the Closing Balance Sheet was completed."  *Id*.  The court

therefore accords no weight to his speculative declaration, and concludes that the Closing

Balance Sheet has no probative value with respect to whether, under the terms of the

SPA, American Express acquired the fixtures of the Building through its purchase of

Rosenbluth.

Thus, the court finds that, in acquiring Rosenbluth, American Express did not

undertake ownership of any items that were fixtures of the Building at the time of the

Stock Purchase Agreement's execution.

**B.**

Therefore, to obtain summary judgment in its favor, plaintiff must prove that the

items in dispute were not "fixtures" prior to commencement of the lease.  American

Express is entitled to summary judgment if there is not sufficient evidence for a jury to

conclude that, pursuant to the Stock Purchase Agreement, American Express acquired

from Rosenbluth at least some of the items in dispute.  *See Anderson*, 477 U.S. at 249

("[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving

party for a jury to return a verdict for that party.").

The court concludes that plaintiff has failed to prove American Express's ownership of the items and that defendant is entitled to judgment in its favor.  As stated above, "[a] fixture is defined as any article of personal property which has become so affixed to the land that it becomes part of it."  *J.K.S.P. Restaurant, Inc.*, 127 A.D.2d at 130.  "'[T]he test to be applied to determine whether goods are fixtures requires (1) the actual attachment of the goods to the real estate, (2) the adaptability of the goods to the use for which the real estate is appropriated, and (3) the intent that the annexation be permanent.'"  1 N.Y. Law & Practice of Real Property § 1:11 (2d ed.) (quoting *Norstar Leasing Services, Inc. v. Colonie Coliseum Enterprises, Inc.*, 546 N.Y.S.2d 942, 944 (N.Y. Sup. 1989)).  American Express has produced evidence sufficient to conclude that the items in question fit these requirements, and plaintiff has produced no evidence that would allow a reasonable juror to reach a contrary conclusion.

First, there is sufficient evidence to conclude that the items in dispute were actually attached to the Building.  American Express presents a declaration of John Schena, who was responsible for American Express's "design and construction" of the Building for the purposes of its tenancy.[6]  Mr. Schena affirms that the items in question were "installed" in the Building prior to American Express's tenancy, and that their

---

[6] Mr. Schena is currently a Vice President at American Express.  At the time of American Express's acquisition of Rosenbluth, he was Vice President of Project Management at Trammel Cro Co., a company that provided "project management services" for American Express, including "design and construction" of the Building for American Express's use of the property. Schena Decl. ¶ 4.

removal would cause damage to the Building.  Schena Decl. ¶ 4.  Plaintiff presents no

evidence contradicting this assertion.[7]  On the contrary, plaintiff submits, as exhibits to

the "Surrebuttal Declaration" of Charles X Block, manager of Bedrock Group, LLC (the

sole general partner of 2401 Walnut LP), photographs of "what defendant left behind" in

the kitchen, gym, computer room, theater, specialized trade spaces, and conference

rooms, as well as photographs of satellite dishes on the roof of the Building.  Block Surr.

Decl. Exhibits. B-J.  There are no items in these photographs that are freestanding from

the Building.

It is clear that the second requirement — that the goods be adaptable "to the use

for which the real estate is appropriated," *id.* — has also been met.  In evaluating this

requirement, the court considers whether the goods were installed for the purpose of

improving the property.   "Generally, if the article is annexed to the realty to be applied

and appropriated to the use of the realty, with a view to the permanent improvement or

beneficial enjoyment thereof, it will be held to be a fixture."  1 N.Y. Law & Practice of

Real Property § 1:15 (2d ed.); *see 41 Fifth Owners Corp. v. 41 Fifth Equities

Corp.*,14 A.D.3d 386 (N.Y. App. Div. 1st Dep't 2005).  Rosenbluth, which installed the

items, used the Building as its company headquarters.  As plaintiff's characterization of

---

[7] In a "Surrebuttal Declaration," Mr. Block urges the court to disregard Mr. Schena's
submission as untimely.  In turn, defendant asks the court to disregard Mr. Block's "Surrebuttal
Declaration," and its accompanying exhibits, as untimely.  As neither party has submitted their
requests through duly filed motions, the parties' submissions will be considered insofar as they
are probative.

the items in the amended complaint makes clear, the items are of the sort that would

improve use of the Building for this purpose.

Finally, the court finds that the third requirement, the "the intent that the

annexation be permanent," 1 N.Y. Law & Practice of Real Property § 1:11 (2d ed.), is

satisfied.  In arriving at this conclusion, the court places much weight on the fact that the

items were installed by the Building's onetime owner for the benefit of the property.  *See*

59 N.Y. Jur.2d § 25 ("The law presumes that since the ownership interest of the vendor of

real estate has been permanent, when he or she annexes chattels thereto it is with the view

to a lasting enjoyment of the estate and for its continued enhancement in value."); *cf.*

*Marine Midland Trust Co. of Binghamton v. Ahern*, 16 N.Y.S.2d 656, 660

(N.Y. Sup. Ct. Broome County 1933) (holding that fact of annexation by owner, "while

not conclusive" of intent, is "entitled to considerable weight").  Plaintiff has presented no

evidence that counterbalances this consideration.

Plaintiff presents three arguments supporting its contention that the items are not

fixtures; none of these creates a genuine issue of material fact.  First, plaintiff charges that

defendant provides "no evidentiary support whatsoever" that the items in dispute are

fixtures.  If true, this charge may be sufficient to defeat defendant's cross-motion for

partial summary judgment, but would not warrant judgment in plaintiff's favor.

However, in his declaration, Mr. Schena affirms that the items were installed prior to

American Express's rental use, and that removal of the items would cause damage to the

-14-

areas from which they were removed.  Moreover, defendant's contentions are supported

by plaintiff's own descriptions of the items, *see* Am. Compl.¶ 11, which indicate that they

are suited for use in a company headquarters, by plaintiff's admission that the items were

located in the Building prior to American Express's tenancy, *see* Block Decl.¶¶ 7, 10, and

by plaintiff's photographs of the Building.  *See* Block Surr. Decl. Exhibits. B-J.

Plaintiff further contends that removal of the items would not cause material

damage to the property, and supports this claim with a declaration of William O'Brien, a

contractor and project manager who has provided an invoice for the costs of removing the

items.  Mr. O'Brien affirms that removal of the items would "not cause any substantial,

material, or structural damage to the building."  O'Brien Decl. ¶ 3.  This argument is

unavailing for two reasons.  First, as stated in the cases that plaintiff relies upon, the fact

that removal of an item would cause material damage to a building is perhaps sufficient

for concluding that the item is a fixture, but is not necessary for reaching such a

conclusion.  *See In re Brooklyn Bridge Southwest Urban Renewal (Project N.Y.R.-67)*,

282 N.Y.S.2d 597, 600 (N.Y. Sup. Ct. 1967) ("Machinery normally is personal property

except where 'it is installed in such manner that its removal will result in material injury

to it or the realty, *or* . . . where there is other evidence that its installation was of a

permanent nature.'" (emphasis added) (quoting *Matter of City of New York [Whitlock*

*Avenue]*, 278 N.Y. 276, 281-282 (N.Y. 1938)); *cf.* 59 N.Y. Jur. 2d Fixtures § 4 ("Actual

attachment or fastening to the land is not necessary to make a chattel a fixture.  A portable

and movable article may be a fixture if it is mechanically fitted to the realty.").  Second,

O'Brien's statement is contradicted by his invoice, which, as defendant highlights,

estimates that removal of the items identified by plaintiff would cost $666,000.

Plaintiff's submission is therefore of little value in light of defendant's evidence, which

includes a declaration of Brian R. Van Ost, an American Express Project Manager who,

consistent with O'Brien's invoice, states that removal of the items will cause damage to

the Building.

Finally, plaintiff urges the court  to consider, as relevant to its claim, Mr. Block's

allegation that defendant "cherry-picked through the Headquarters removing certain

fixtures and leaving many other fixtures" of lesser value.  Block Surr. Decl. ¶ 18.

Defendant contends that it based its decisions whether to remove items strictly on its

obligations under the terms of the lease.  Even if, for the sake of viewing the evidence in

the light most favorable to plaintiff, the court assumed that defendant's contention was

not true, plaintiff's allegation has no bearing on the issue before the court: whether,

irrespective of other items that it removed, American Express is responsible for removing

the items listed in plaintiff's complaint.  The court therefore concludes that the items in

dispute are fixtures of which plaintiff obtained possession when it acquired the Building

from Rosenbluth.  American Express is therefore not responsible for removal of the

items.

## __Conclusion__

In summary, the lease does not require American Express to remove those items that were fixtures prior to commencement of the lease, and thus part of the Building owned by plaintiff.  There is sufficient evidence to support American Express's claim that the items in dispute are indeed fixtures, and plaintiff cannot point to evidence supporting a contrary conclusion.  Accordingly, plaintiff's motion for partial summary judgment will be denied, and defendant's cross-motion will be granted.  An order effectuating these rulings accompanies this memorandum.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| 2401 WALNUT, L.P.,<br><br>                    Plaintiff,<br><br>       v.<br><br>AMERICAN EXPRESS TRAVEL<br>RELATED SERVICES COMPANY,<br>INC.,<br><br>                    Defendant. | Civ. No. 07-1281 |

**ORDER**

January 23, 2008

         For the reasons set forth in the accompanying memorandum, it is ORDERED that:

(1)      Walnut L.P.'s motion for partial summary judgment (Docket No. 26) is
         DENIED; and

(2)      American Express Travel Related Services Company, Inc.'s motion for
         partial summary judgment (Docket No. 30) is GRANTED.

                              BY THE COURT:

                              /s/ Louis H. Pollak

                              Pollak, J.

-18-