**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

2401 WALNUT, L.P.,

                  Plaintiff,

    v.

AMERICAN EXPRESS TRAVEL
RELATED SERVICES COMPANY,
INC.,

                  Defendant.

Civ. No. 07-1281

**OPINION**

Pollak, J.                                          February 16, 2009

Before the court are defendant's motion to dismiss count two of plaintiff's amended complaint, Docket No. 71, and the parties' cross-motions for partial summary judgment as to count one of the amended complaint, Docket Nos. 78 and 79. These motions raise common questions of law and will be addressed concurrently.[1] For the reasons that follow, defendant's motion to dismiss count two of the amended complaint will be granted, and both of the cross-motions for partial summary judgment will be denied.

### I.  Facts

The relevant facts of this case, many of which were set forth in the court's

---

[1] This court has diversity jurisdiction over the action pursuant to 28 U.S.C. § 1332.

memorandum and order granting defendant's first motion for partial summary judgment,

Docket No. 65, are as follows:  Plaintiff, 2401 Walnut L.P., owns an office building at

2401 Walnut Street, Philadelphia (hereinafter the "Building").  Defendant American

Express Travel Related Services Company, Inc. ("American Express") was at one time

plaintiff's tenant in the Building under the terms of a commercial lease that commenced

on October 1, 2003 and is now terminated.  The parties entered into this lease pursuant to

an agreement wherein American Express agreed to purchase the stock of the building's

then-owner, Rosenbluth International, Inc. ("Rosenbluth").

The Building once served as Rosenbluth's company headquarters.  On July 11,

2003, American Express entered into a Stock Purchase Agreement ("SPA") with

Rosenbluth for the purchase of all shares of Rosenbluth stock.  The SPA provided that

certain of Rosenbluth's assets would be excluded from the purchase, and that Rosenbluth

would transfer these assets to a third party prior to the closing.  SPA § 5.8.  Among these

excluded assets was the Building, though American Express would acquire the "tangible

property located in the building":

> Prior to the Closing, [Rosenbluth] shall take all reasonably appropriate and
> necessary action to dispose of or transfer the following assets of the Company
> [Rosenbluth] effective as of the Closing Date and to transfer or to discharge the
> related liabilities . . . : the real property (land and building) for the Company's
> headquarters located in Philadelphia, PA, including the adjacent parking lot (the
> "Headquarters"), but not the computers, equipment and other tangible property
> located in the building, which Headquarters shall be transferred to an assignee or
> transferee who agrees to enter into a lease agreement, dated as of the Closing
> Date, in the form of Exhibit 7.1 (xiii) attached hereto (the "Headquarters Lease
> Agreement") and obtain any consents related thereto . . . ."

SPA § 5.8.  The closing was completed on September 30, 2003.

As required by the SPA, Rosenbluth transferred the Building to a third party, plaintiff 2401 Walnut L.P.  The transfer, as described in the deed, included the Building "and improvements thereon erected."  *See* Deed.  Plaintiff entered into the "Headquarters Lease Agreement" with American Express referenced in § 5.8 of the SPA.  Under the lease's terms, American Express was required, upon termination of the lease, to "leave the Building . . . in good order and condition, ordinary wear and tear, damage by fire or other casualty alone excepted," Lease § 6(a).  American Express was also responsible, under the lease, "for making all repairs . . . foreseen and unforeseen, required to keep and maintain the structural and non-structural portions of the Building and Property . . . in good order and condition."  *Id.* § 6(b).  The lease further provided that American Express, at its own expense, would remove all items of its property from the Building upon termination of the lease:

> Tenant shall at the expiration or earlier termination of this lease or of Tenant's right of possession, also remove from the Building all furniture, trade fixtures, office equipment and all other items of Tenant's property so that the Landlord may again have and repossess the Building. . . . Tenant shall repair, at or before the expiration or termination of this Lease or of Tenant's right of possession, all damage done to the Building or any other part of the Building by installation or removal of furniture and property by Tenant . . . .

Lease § 6(a).  The lease went into effect October 1, 2003 and terminated October 30, 2006.

In March 2007, plaintiff filed suit for breach-of-the-lease in the Philadelphia Court

of Common Pleas.  Defendant then removed the case to this court.  In its one-count first

amended complaint, plaintiff alleged that defendant failed to satisfy its obligation to leave

the building in satisfactory condition and failed to comply with its obligation to remove

the following items from the Building:

> (1)[K]itchen fixtures and signage (including, without limitation, equipment,
> plumbing, and grease traps), (2) "Continuum" trade space and all
> specialized rooms (including ceilings, walls, flooring and signage), (3)
> customized trade spaces (including, without limitation, data room, theater,
> and network operations center), (4) customized components (including,
> without limitation, halon fire system), (5) satellite dishes, projection
> equipment, screens and other related equipment, (6) metal rods left in
> building where signage for Rosenbluth International was removed by
> Tenant, (7) customized fixtures in basement including a gym and lockers,
> (8) signage throughout building including wall name plates, (9) piping from
> water purification systems on each floor, and (10) superfluous cabling and
> wiring that runs throughout the building.

Am. Compl. ¶ 11.  In the parties' first cross-motions for partial summary judgment,

defendant acknowledged that it did not remove the items listed in the amended complaint.

Defendant argued, however, that the disputed items were "fixtures" that were constitutive

of the Building that plaintiff purchased pursuant to the SPA, and that therefore defendant

had no obligation to remove the items, which belonged to plaintiff, upon termination of

the lease.  In January 2008, the court accepted this argument and awarded partial

summary judgment to defendant.  Docket No. 65.

In April 2008, plaintiff, with the permission of Magistrate Judge Angell, filed a

two-count second amended complaint.  In the second amended complaint, plaintiff again

alleges that defendant failed to satisfy its obligation to leave the building in satisfactory

condition.  However, the second amended complaint omits the claim in the first amended

complaint upon which this court granted summary judgment — that defendant *failed* to

remove certain items — and, in its stead, alleges that defendant improperly *removed* items

that were "fixtures" of the Building:

> In breach of paragraph 6(a) of the Lease, [American Express] has removed
> various fixtures in the Building that are [plaintiff's] property and not
> [American Express's] property, including, without limitation, (1) kitchen
> fixtures and signage (including, without limitation, equipment, and
> plumbing), (2) portions of the "Continuum" trade space and all specialized
> rooms (including ceilings, walls, flooring and signage), (3) portions of
> customized spaces (including, without limitation, data room, theater, and
> network operations center), (4) portions of customized components
> (including, without limitation, built-in computer fixtures), (5) audio-visual
> fixtures, projection equipment fixtures, screens, plasma TVs and other
> related fixtures, (6) signage for Rosenbluth International, (7) customized
> fixtures in basement including, without limitation, gym fixtures and
> mirrored walls, (8) signage throughout building including, without
> limitation, wall name plates, (9) water purification systems on each floor,
> (10) electrical, computer, satellite and/or telephone system fixtures, and
> (10) built-in work station fixtures and furniture fixtures.

Second Am. Compl. ¶ 12.  This allegation is the gravamen of both a breach-of-the-lease

claim (count one) and a negligence claim (count two).

In May 2008, defendant moved to dismiss count two of the second amended

complaint.  In its motion to dismiss, defendant argues that plaintiff's negligence count is

essentially duplicative of its breach-of-the-lease count and is therefore barred under

Pennsylvania's "gist-of-the-action" and "economic loss" doctrines.  The parties then

submitted cross-motions for partial summary judgment on the question whether American

Express breached the lease by improperly removing fixtures that, as part of the Building,

belonged to plaintiff.

## II.  Motion to Dismiss

In moving to dismiss count two of the amended complaint, defendant contends that, given the pendency of count one–the breach-of-the-lease count–Pennsylvania's "gist-of-the-action" and "economic loss" doctrines preclude plaintiff from pursuing its negligence claim.  Plaintiff can defeat the motion to dismiss if it "allege[s] facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'"  *Victaulic Co. v. Tieman*, 499 F.2d 227, 234 (3d Cir.2007) (quoting *Bell Atlantic Corp. v. Twombly*, --- U.S. ----, 127 S.Ct. 1955, 1965 (2007)).

### A.  Choice of Law

As an initial matter, plaintiff contends that New York law governs the parties' obligations under the lease, and, alternatively, that plaintiff's claims may be pursued under Pennsylvania law.[2]  The lease contains no choice-of-law provision.  However, the Stock Purchase Agreement ("SPA") states:  "This Agreement shall be governed by and construed in accordance with the laws of the State of New York without giving effect to any choice or conflict of law provision thereof."  SPA § 11.9.  The SPA also contains

---

[2]  In its January 2008 memorandum and order, the court was called upon to determine the parties' obligations under the Stock Purchase Agreement only, and the court therefore did not need to reach the question of which law controls the terms of the lease.

a clause incorporating exhibits of the SPA into the document itself: "The Exhibits and Schedules identified in this Agreement are incorporated herein by reference and made a part hereof. In the event of any conflict between the provisions of this Agreement and any Schedules or Exhibits, the provisions of this Agreement control." *Id.* § 11.15. Plaintiff argues that, under this provision, the lease, a form copy of which was included as Exhibit 7.1 of the SPA, is incorporated as part of the SPA, and is therefore subject to New York law. *See id.* § 5.8 ("Headquarters shall be transferred to an assignee or transferee who agrees to enter into a lease agreement, dated as of the Closing Date, in the form of Exhibit 7.1 (xiii) attached hereto (the 'Headquarters Lease Agreement') and obtain any consents related thereto . . . .").

However, Rosenbluth and American Express entered into the SPA on July 11, 2003, while, as per the terms of the SPA, 2401 Walnut L.P. and American Express did not enter into the lease until September 20, 2003, the date of the closing. While a form of the lease, not executed by the parties, was attached as an exhibit of the SPA, the actual lease agreement between the parties, which was not in effect at the time the parties entered into the SPA, was not an exhibit of the SPA. The lease itself, therefore, was not a document that was incorporated into the SPA. Rather, § 5.8 of the SPA merely set forth the intent of Rosenbluth and American Express that a separate contract, a lease to American Express by Rosenbluth's transferee or assignee, would be entered into at a later time

This interpretation of the intended meaning of the SPA is further evident by the SPA's references to "Transaction Documents" as a document category distinct from "Exhibits." The SPA defines "Transaction Documents" as "all of the agreements, documents, instruments and certificates contemplated by this Agreement *or to be executed by a Party in connection with* the consummation of the transactions contemplated by this Agreement . . . ." SPA § 1.141 (emphasis added). As defendant notes in its reply brief in support of the motion to dismiss, Docket No. 74, while certain clauses in the SPA, including a provision where the parties to the SPA "consent[] to the exclusive jurisdiction and venue of the federal and state courts located in the City, County, and State of New York," SPA § 11.10, contain express references to "Transaction Documents," neither the SPA's choice-of-law provision, § 11.9, nor the incorporation clause relied upon by plaintiff in its instant motion, § 11.15, refers to "Transaction Documents."[3] Ruling on the parties' first cross-motions for summary judgment, this court, addressing a separate clause of the SPA (§ 11.4), determined that "Transaction Documents" identified in the SPA are not integrated into the SPA itself. Docket No. 65 at 10 n.5. Accordingly, the court finds that the terms of the SPA and the lease make clear that the lease is a contract separate from — and not subject to the

---

[3] Indeed, plaintiff does not contest that "Transaction Documents" are not incorporated under the terms of SPA § 11.15.

choice-of-law provision contained in — the SPA.[4]

Therefore, the court concludes that Pennsylvania law governs the terms of the lease.

### B. Gist-of-the-Action Doctrine

Defendant contends that, under Pennsylvania law, the "gist-of-the-action" doctrine forecloses plaintiff's negligence claim.[5]  As the Third Circuit has recently explained, "[t]he 'gist of the action' doctrine is 'designed to maintain the conceptual distinction between breach of contract claims and tort claims [by] precluding plaintiffs from recasting ordinary breach of contract claims into tort claims.'" *Toledo Mack Sales & Service, Inc. v. Mack Trucks, Inc.*, 530 F.3d 204, 229 (3d Cir. 2008) (quoting *eToll Inc. v. Elias/Savion Advertising Inc.*, 811 A.2d 10, 14 (Pa. Super. Ct. 2002)).  The "focus of analysis" under this doctrine "is whether 'actions lie from a breach of the duties imposed

---

[4] The court finds that the terms of the SPA and the lease are sufficiently clear to make this determination as a matter of law with the constraints of Federal Civil Rule of Procedure 12(b)(6).  However, insofar as this determination may be regarded as more appropriately made on summary judgment, the court finds that the parties — both of which addressed this choice-of-law issue at length in their first cross-motions for summary judgment — have been "given reasonable opportunity to present all material made pertinent to" a motion for summary judgment under Federal Civil Rule of Procedure 56.  Accordingly, the court would, if it deemed it necessary to do so, treat defendant's motion to dismiss as one for summary judgment, and reach the same conclusion.  *See* Fed. R. Civ. P. 12(c).

[5] As my colleague Judge Robreno recently observed, "[a]lthough the Pennsylvania Supreme Court has not adopted the "gist of the action" doctrine, numerous state and federal courts have predicted that it will."  *Cottman Transmission Systems, LLC v. Kershner*, 536 F. Supp. 2d 543, 555 n.9 (E.D. Pa. 2008) (citing Third Circuit, Eastern District of Pennsylvania, and Pennsylvania Superior Court cases so predicting).

as a matter of social policy' or 'from the breach of duties imposed by mutual consensus.'"

*Id.* (quoting *Cambria County v. Int'l Ins. Co.*, 685 A.2d 581, 590 (Pa. Super. Ct. 1995);

*see also eToll*, 811 A.2d at 14 ("[A] claim should be limited to a contract claim when the

parties' obligations are defined by the terms of the contracts, and not by the larger social

policies embodied by the law of torts.").

    As a recent Pennsylvania Superior Court opinion makes clear, the gist-of-the-

action doctrine is to be applied with circumspection in a landlord-tenant context.  *See*

*Reed v. Dupuis*, 920 A.2d 861 (Pa. Super. Ct. 2007).  In *Reed*, the court determined that a

residential plaintiff-tenant could pursue a negligence claim against her landlord for

injuries, both to her person and to her property, resulting from the landlord's failure to

repair damage caused by a flood.  The plaintiff's complaint alleged that the landlord

orally promised to make such repairs, but never did so.  The defendant-landlord

contended that the plaintiff's negligence claim was based on contract and was thus

foreclosed under the "gist-of-the-action" doctrine.  The *Reed* court concluded that,

contrary to the conclusion of the trial court that the "'dispute arises from the allocation of

maintenance duties as set forth in the lease,'" the landlord's liability "d[id] not stem from

any particular provision of the lease agreement." *Id.* at 866.  Rather, the landlord's

liability stemmed from two duties of care, identified in the Restatement (Second) of Torts

and the Restatement (Second) of Property, owed to the tenant.   First, a landlord has "a

legal duty . . . to *exercise reasonable care* in fulfilling her promise and correcting the

disrepair — a duty that is separate and distinct from her contractual duty/promise to repair the water infiltration." *Id.* (citing *Restatement (Second) of Torts* § 357).  Second, the landlord has a "legal duty to exercise reasonable care when he/she undertakes to render services for a tenant and repairs known dangerous conditions on the leased premises." *Id.* at 867 (citing *Restatement (Second) of Torts* § 323 and *Restatement (Second) of Property* § 17.6)).  These obligations, the court observed, "are not grounded in the lease agreement," but are "instead distinct and separate obligations created by 'the larger social obligations embodied in the law of torts.'" *Id.* (quoting *eToll*, 811 A.2d at 14).  Accordingly, the court held that plaintiff's negligence claim was not barred by the "gist-of-the-action."

Under *Reed*'s holding, a court, in applying the gist-of-the-action doctrine, must determine whether the claim in question arises from a legal duty that is "created by the larger social obligations embodied in the law of torts" and is "separate and distinct" from those that the parties have assumed by contract.  *Id.* at 866, 867 (internal quotation marks omitted).  *Cf. eToll*, 811 A.2d at 19 (holding that the "gist-of-the-action" doctrine applies "where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract") (internal quotation marks omitted).  In making this determination in the context of a residential lease dispute, one must consider whether application of the gist-of-the-action doctrine would dilute the protections afforded to the tenant under the state's common law.  *See Reed*, 920 A.2d at

-11-

867 (concluding that, if the gist-of-the-action doctrine were applied to bar plaintiff's negligence claim, "the tort duties imposed upon a landlord under [*Restatement (Second) of Torts* § 323 and *Restatement (Second) of Property* § 17.6] would be rendered meaningless, and their underlying social policies would not be given effect").

However, the inquiry in the instant action differs from that undertaken in *Reed* because rather than considering a residential landlord-tenant relationship, the court evaluates the obligations of a commercial tenant under a lease that was negotiated in an arms-length transaction. *See eToll*, 811 A.2d at 23 (favorably citing a Pennsylvania Commonwealth case for the proposition that there is no "special relationship" between parties to an arms length commercial lease agreement). The question that then arises is whether, in the commercial lease context, where no "special relationship" exists, plaintiff's negligence claim is sufficiently distinct from plaintiff's breach-of-the-lease claim as to be capable of being independently pursued.

The second amended complaint alleges that defendant, "as tenant of the Building," owed — and breached — a legal duty "to keep the Building in good order and return it to plaintiff at the end of the lease term in the same condition as it was received except for ordinary wear and tear." Second Am. Compl. ¶ 22. The duty asserted is, indeed, one that is "created by the larger social obligations embodied in the law of torts." *See, e.g., U. S. Gypsum Co. v. Schiavo Bros., Inc.*, 668 F.2d 172,174 (3d Cir. 1981) ("The obligation of a tenant to return the leasehold property in the condition in which it was received,

reasonable wear and tear excepted, is fundamental to the landlord-tenant relationship, even in a commercial setting.") (applying Pennsylvania law).  The legal duty is not, however, one that is "separate and distinct" from the duties that defendant assumed under the lease.  As described above, the lease obligated defendant, as the tenant of the Building, to "leave the Building . . . in good order and condition, ordinary wear and tear, damage by fire or other casualty alone excepted," Lease § 6(a), and to make "all repairs . . . foreseen and unforeseen, required to keep and maintain the structural and non-structural portions of the Building and Property . . . in good order and condition." *Id.* § 6(b).  These terms subtly expound upon a tenant's duty under common law "to return the leasehold property in the condition in which it was received, reasonable wear and tear excepted."  *U. S. Gypsum*, 668 F.2d at 174; *cf. U. S. Gypsum Co. v. Schiavo Bros., Inc.*, 485 F. Supp. 46, 50 (E.D. Pa. 1979) (noting that the lease at issue in the *Gypsum* litigation "did not contain an express clause imposing on the defendant a duty to return the property").  Such modifications to the leaseholder's common law duty to repair are, of course, the parties' prerogative to bargain for.  *See Restatement (Second) Property: Landlord and Tenant* § 12.2 cmt. l ("The obligations assumed by the tenant under a promise by him to keep the leased property in repair depend, of course, on the intention of the parties as manifested by the language employed to express the promise.").  Accordingly, plaintiff's second amended complaint alleges that defendant violated legal duties that derive from specific provisions of the commercial lease.  Application of the

-13-

gist-of-the-action doctrine in this context, where the lease was negotiated between sophisticated parties in an arms-length transaction, would not cause the tenant's obligation to repair to "be rendered meaningless" and would not cause "underlying social policies" not to be given effect.  *Reed*, 920 A.2d at 867.

Therefore, the court concludes that plaintiff's negligence claim is barred by Pennsylvania's gist-of-the-action doctrine.[6]  The court will thus dismiss count two of the second amended complaint.

### III.  Cross-Motions for Summary Judgment

Pursuant to the SPA, the Building was transferred to plaintiff with the condition that it be leased to American Express.  In its January 2008 memorandum and order, Docket No. 65, this court held that, under the terms of the SPA, American Express did not undertake ownership of any items that, under New York law (pursuant to the SPA's choice-of-law provision, § 11.4), were "fixtures" of the Building at the time of the SPA's execution.[7]  In the second amended complaint, plaintiff alleges that, "[i]n breach of

---

[6] Because it so concludes, the court will not address defendant's argument that plaintiff's claim is also barred by the economic loss doctrine.

[7] Contrary to plaintiff's representations to Judge Angell at a January 2008 discovery conference, this court has not ruled on whether any items that have been removed from the Building were "fixtures" of the Building at the time the parties entered into the SPA.  In its January 2008 memorandum and order, this court addressed the legal status of items that American Express allegedly failed to remove from the Building in breach of the lease.  The court determined that American Express produced evidence establishing that these items were "fixtures" under New York law.  No determination was made as to the legal status of items that were removed from the Building.  Indeed, in addressing plaintiff's allegation that defendant "cherry-picked" certain fixtures from the

paragraph 6(a) of the Lease, [American Express] has removed various fixtures in the Building that are [plaintiff's] property and not [American Express's] property . . . ." Second. Am. Compl. ¶ 12.  The parties now move for partial summary judgment as to whether American Express has removed any items that were "fixtures" of the Building, and thus belonged to plaintiff under the terms of the SPA.

Genuine issues of material fact regarding the disputed items preclude summary judgment in favor of either party.  As stated in the court's January 2008 memorandum and order, "[a] fixture is defined as any article of personal property which has become so affixed to the land that it becomes part of it."  *J.K.S.P. Restaurant, Inc. V. Nassau County*, 127 A.D.2d 121, 130 (N.Y. App. Div. 2nd Dep't 1987).  "'[T]he test to be applied to determine whether goods are fixtures requires (1) the actual attachment of the goods to the real estate, (2) the adaptability of the goods to the use for which the real estate is appropriated, and (3) the intent that the annexation be permanent.'"  1 N.Y. Law & Practice of Real Property § 1:11 (2d ed.) (quoting *Norstar Leasing Services, Inc. v. Colonie Coliseum Enterprises, Inc.*, 546 N.Y.S.2d 942, 944 (N.Y. Sup. 1989)).  The determination that an item of property is a "fixture" is thus a fact-specific inquiry.

In its motion for partial summary judgment, plaintiff avers that "[h]undreds of

---

Building while leaving others behind, the court wrote that "plaintiff's allegation has no bearing on the issue before the court: whether, irrespective of other items that it removed, American Express is responsible for removing the items listed in plaintiff's complaint." Docket No. 65 at 16.

fixtures were removed by defendant from each floor of the Building."  Docket No. 80 at 23.  With its previous motion for partial summary judgment, plaintiff proffered extensive documentation of the items that remained in the Building following the termination of the lease.  However, in support of the present motion, plaintiff has not enumerated the items that American Express removed from the Building, or provided any evidence from which the identity of these items can be discerned.  Plaintiff thus asks the court for an award of summary judgment on the basis of the categorical assertion, in an affidavit of Charles X. Block, that "[d]uring the term of the Lease, . . . defendant systematically stripped all fixtures of value from the Building, leaving a non-functional shell of the Building it had leased," and evidence documenting the removal of some of the items.  Block Decl., Docket No. 83 at 5.  The photographs provided show the places in the building, including the kitchen, cafeteria, workstations, and trade spaces where items were removed; however, neither the photographs nor the index explain the nature of all the missing items.  Block Decl. Ex. N, O.  Block also indicates that further discovery is required to determine exactly what items purported to be fixtures were removed.  Block Reply Decl., Docket No. 92 at 5.  Without evidence from which to determine the identity of each contested item, this court cannot determine whether that item is a fixture.

Conversely, American Express has not produced evidence that warrants an award of partial summary judgment in its favor.  American Express's submissions include a declaration of John R. Schena, who was responsible for American Express's "design and

construction" of the Building for the purposes of its tenancy,[8] asserting that the items that American Express removed from the Building did not include fixtures, Docket No. 78, Exh. E ¶ 8.  American Express also has submitted its "Revised Supplemental Responses to Plaintiff's First Set of Interrogatories, Docket No. 78, Exh. F. ¶ 13 and 14, which state that American Express has produced documents to plaintiff that identify the items of property that were removed from the Building.  As with plaintiff's submissions, so with defendant's submissions.  The court cannot, on the basis of what is of record, determine the identity of each of the contested items.  Therefore, *a fortiori*, the court cannot determine whether any of the contested items could be considered a fixture, and hence acquired by plaintiff with the purchase of the Building.

Thus, since multiple issues of material fact remain, each party's request for partial summary judgment must be denied.

### IV.  Conclusion

In summary, the lease is governed by Pennsylvania law, and plaintiff's negligence claims are barred by the "gist-of-the-action" doctrine.  Defendant's motion to dismiss the negligence claims in the Amended Complaint is therefore granted.  Because there is insufficient evidence regarding the identity of the removed items purported to be fixtures,

---

[8] Mr. Schena is currently a Vice President at American Express.  At the time of American Express's acquisition of Rosenbluth, he was Vice President of Project Management at Trammel Crow Co., a company that provided "project management services" for American Express, including "design and construction" of the Building for American Express's use of the property. Schena Decl. ¶ 4.

the court cannot determine whether these items, or any of them, were indeed fixtures.

Accordingly, the cross-motions for summary judgment of plaintiff and defendant

regarding the removed items are therefore denied.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| 2401 WALNUT, L.P.,<br><br>                            Plaintiff,<br><br>         v.<br><br>AMERICAN EXPRESS TRAVEL<br>RELATED SERVICES COMPANY,<br>INC.,<br><br>                            Defendant. | Civ. No. 07-1281 |

**ORDER**

February 16, 2009

For the reasons set forth in the accompanying opinion, it is ORDERED that:

(1)    Defendant American Express Travel Related Services Company, Inc.'s

        motion to dismiss the negligence count of the Amended Complaint (Docket

        No. 71) is GRANTED; and

(2)    The cross-motions for partial summary judgment of Plaintiff 2401 Walnut,

        L.P. and Defendant American Express Travel Related Services Company,

        Inc. (Docket Nos. 78 and 79) are both DENIED.

                            BY THE COURT:


                             /s/ Louis H. Pollak
                            Pollak, J.

-19-