**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| 2401 WALNUT, L.P.,<br><br>                    Plaintiff,<br><br>    v.<br><br>AMERICAN EXPRESS TRAVEL<br>RELATED SERVICES COMPANY,<br>INC.,<br><br>                    Defendant. | Civil Action<br>No. 07-1281 |

March  7, 2011

### OPINION

Before the court are the parties' cross-motions for partial summary judgment as to count one of the second amended complaint.  (*See* Docket Nos. 116 and 119.)  These cross-motions raise common questions of law and will be addressed concurrently.  For the reasons that follow, plaintiff's motion for partial summary judgment will be denied in its entirety, while defendant's motion for partial summary judgment will be granted in part and denied in part.  This long-running saga must continue because, with one exception, the parties have utterly failed to demonstrate that there are no genuine issues of material fact to be resolved at trial.

### I.     Facts

These cross-motions are actually the third set of cross-motions for partial summary judgment.  This court previously addressed one set of cross-motions with respect to the

first amended complaint (Docket No. 21) on January 24, 2008, and an additional set of cross-motions with respect to the second amended complaint (Docket No. 68) on February 18, 2009. The relevant facts of this case, many of which were set forth in the court's memoranda and orders addressing the prior motions for summary judgment (Docket Nos. 65 & 94) are as follows.

Plaintiff, 2401 Walnut, L.P. ("2401 Walnut"), owns an office building at 2401 Walnut Street, Philadelphia (hereinafter the "Building"). Defendant American Express Travel Related Services Company, Inc. ("American Express"), was at one time plaintiff's tenant in the Building under the terms of a commercial lease that commenced on October 1, 2003, and is now terminated. The parties entered into this lease pursuant to an agreement wherein American Express agreed to acquire another company, Rosenbluth International, Inc. ("Rosenbluth"), the building's then-owner.

The Building formerly served as Rosenbluth's company headquarters. On July 11, 2003, American Express entered into a Stock Purchase Agreement ("SPA") with Rosenbluth to purchase all shares of Rosenbluth stock. The SPA provided that certain of Rosenbluth's assets would be excluded from the purchase, and that Rosenbluth would transfer these assets to a third party prior to the closing. SPA § 5.8 (Docket No. 83, Ex. H., at 42). Among these excluded assets was the Building, though American Express would acquire the "tangible property located in the building":

> Prior to the Closing, [Rosenbluth] shall take all reasonably appropriate and
> necessary action to dispose of or transfer the following assets of the Company

[Rosenbluth] effective as of the Closing Date and to transfer or to discharge the related liabilities . . . : the real property (land and building) for the Company's headquarters located in Philadelphia, PA, including the adjacent parking lot (the "Headquarters"), *but not the computers, equipment and other tangible property located in the building*, which Headquarters shall be transferred to an assignee or transferee who agrees to enter into a lease agreement, dated as of the Closing Date, in the form of Exhibit 7.1 (xiii) attached hereto (the "Headquarters Lease Agreement") and obtain any consents related thereto . . . .

*Id.* (emphasis added). The closing was completed on September 30, 2003.

As required by the SPA, Rosenbluth transferred the Building to a third party, plaintiff 2401 Walnut. The transfer, as described in the deed, included the Building "and improvements thereon erected." *See* Deed (Docket No. 83, Ex. L., at 1). Plaintiff then entered into the "Headquarters Lease Agreement" with American Express referenced in § 5.8 of the SPA. Under the lease's terms, American Express was required, upon termination of the lease, to "leave the Building . . . in good order and condition, ordinary wear and tear, damage by fire or other casualty alone excepted." Lease § 6(a) (Docket No. 83, Ex. B., at 3–4). American Express was also responsible, under the lease, "for making all repairs . . . foreseen and unforeseen, required to keep and maintain the structural and non-structural portions of the Building and Property . . . in good order and condition." *Id.* § 6(b) (Docket No. 83, Ex. B., at 4). The lease further provided that American Express, at its own expense, would remove all items of its own property from the Building upon termination of the lease:

Tenant shall at the expiration or earlier termination of this lease or of Tenant's right of possession, also remove from the Building all furniture, trade fixtures,

office equipment and all other items of Tenant's property so that the Landlord may again have and repossess the Building. . . . Tenant shall repair, at or before the expiration or termination of this Lease or of Tenant's right of possession, all damage done to the Building or any other part of the Building by installation or removal of furniture and property by Tenant . . . .

*Id.* § 6(a) (Docket No. 83, Ex. B., at 3–4). The lease further gave plaintiff the option to assume possession of any "fixtures" that American Express attached to the Building, or to have American Express remove them:

All alterations, additions or improvements made by Tenant and all fixtures attached to the Building shall become the property of Landlord and remain at the Building, or, at Landlord's option, any or all of the foregoing shall be removed at the cost of the Tenant before the expiration or sooner termination of this lease and in such event Tenant shall repair all damage to the Building caused by the installation and/or removal thereof.

*Id.* § 8(b) (Docket No. 83, Ex. B., at 5–6).[1] The lease went into effect October 1, 2003, and terminated October 30, 2006.

In March 2007, plaintiff filed suit for breach-of-the-lease in the Philadelphia Court of Common Pleas. Defendant then removed the case to this court. In its one-count first amended complaint, plaintiff alleged that defendant failed to satisfy its obligation to leave the building in satisfactory condition and failed to comply with its obligation to remove the following items from the Building:

(1) [K]itchen fixtures and signage (including, without limitation, equipment, plumbing, and grease traps), (2) "Continuum" trade space and all specialized

---

[1] However, by the terms of the lease, plaintiff could waive this right with respect to items that American Express identified in writing. *See* Lease § 6(b) (Docket No. 83, Ex. B., at 4). There does not appear to have been any such notification here.

rooms (including ceilings, walls, flooring and signage), (3) customized trade spaces (including, without limitation, data room, theater, and network operations center), (4) customized components (including, without limitation, halon fire system), (5) satellite dishes, projection equipment, screens and other related equipment, (6) metal rods left in building where signage for Rosenbluth International was removed by Tenant, (7) customized fixtures in basement including a gym and lockers, (8) signage throughout building including wall name plates, (9) piping from water purification systems on each floor, and (10) superfluous cabling and wiring that runs throughout the building.

Am. Compl. ¶ 11 (Docket No. 21). In the parties' first cross-motions for partial summary judgment, defendant acknowledged that it did not remove the items listed in the amended complaint. Defendant argued, however, that the disputed items were "fixtures" that were constitutive of the Building that plaintiff purchased pursuant to the SPA, and that therefore defendant had no obligation to remove the items, which belonged to plaintiff, upon termination of the lease. In January 2008, this court accepted this argument and awarded partial summary judgment to defendant. (Docket No. 65.)

In April 2008, plaintiff, with the permission of Magistrate Judge M. Faith Angell, filed a two-count second amended complaint. In the second amended complaint, plaintiff again alleges that defendant failed to satisfy its obligation to leave the building in satisfactory condition. However, the second amended complaint omits the claim in the first amended complaint upon which this court granted summary judgment—that defendant *failed* to remove certain items—and, in its stead, alleges that defendant improperly *removed* items that were "fixtures" of the Building:

In breach of paragraph 6(a) of the Lease, [American Express] has removed various fixtures in the Building that are [plaintiff's] property and not

5

[American Express's] property, including, without limitation, (1) kitchen fixtures and signage (including, without limitation, equipment, and plumbing), (2) portions of the "Continuum" trade space and all specialized rooms (including ceilings, walls, flooring and signage), (3) portions of customized spaces (including, without limitation, data room, theater, and network operations center), (4) portions of customized components (including, without limitation, built-in computer fixtures), (5) audio-visual fixtures, projection equipment fixtures, screens, plasma TVs and other related fixtures, (6) signage for Rosenbluth International, (7) customized fixtures in basement including, without limitation, gym fixtures and mirrored walls, (8) signage throughout building including, without limitation, wall name plates, (9) water purification systems on each floor, (10) electrical, computer, satellite and/or telephone system fixtures, and (11) built-in work station fixtures and furniture fixtures.

Second Am. Compl. ¶ 12 (Docket No. 68). With this factual allegation, the second amended complaint alleges both a breach of lease claim (count one) and a negligence claim (count two).

In May 2008, defendant moved to dismiss count two of the second amended complaint. In its motion to dismiss, defendant argued that plaintiff's negligence count is essentially duplicative of its breach-of-the-lease count and is therefore barred under Pennsylvania's "gist-of-the-action" and "economic loss" doctrines. The parties also submitted cross-motions for partial summary judgment on the question whether American Express breached the lease by improperly removing fixtures that, as part of the Building, belonged to plaintiff.

In February 2009, this court accepted the "gist-of-the-action" argument and awarded partial summary judgment to defendant on count two only. (Docket No. 94.) The court denied both cross-motions for partial summary judgment on the breach of lease

claim because "there [wa]s insufficient evidence regarding the identity of the removed items purported to be fixtures." *Id.* at 17. Therefore, the court could "not determine whether any of the contested items could be considered a fixture, and hence, acquired by plaintiff with the purchase of the building. *Id.*

Following the denial of the cross-motions, the parties conducted additional discovery in an attempt to uncover the identity of the removed items—thousands of pages of documents were produced and numerous depositions were taken. Plaintiff relies almost exclusively on its submissions prior to February 2009, but during discovery it produced additional documents (such as building schematics) and an expert witness report. (*See* Docket No. 122 Exs. A–J.) Defendant has produced voluminous documents, most notably the fixed asset lists, that purport to schedule all of the "Rosenbluth fixed assets transferred to American Express." (*See* Ricciuti Decl., Exs. A. & B (Docket Nos. 116-3 to -10).)

After the close of fact discovery, the parties submitted a second round of cross-motions for partial summary judgment on the breach of lease claim. (Docket Nos. 116 and 119.) Defendant argues that plaintiff had still not enumerated the fixtures allegedly removed or produced any evidence from which the identity of those fixtures could be discerned. Plaintiff argues that the evidence submitted prior to discovery, plus information considered by its damages expert, "clearly shows" that American Express removed fixtures from the building. Additionally, plaintiff expressly disavows any claims

7

of missing fixtures other than items in the kitchen/cafeteria, in the theater, the workstation

areas, in the health club, and the signage.  (Docket No. 120 at 27.)

## II.     Legal Standard for Cross-Motions for Summary Judgment

"When confronted with cross-motions for summary judgment '[t]he court must

rule on each party's motion on an individual and separate basis, determining, for each

side, whether a judgment may be entered in accordance with the Rule 56 standard.'"

*Schlegel v. Life Ins. Co. of N. Am.*, 269 F. Supp. 2d 612, 615 n.1 (E.D. Pa. 2003) (quoting

10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and*

*Procedure* § 2720 (1998)).

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary

judgment if the movant shows that there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law."  A fact is considered "material" if

it "bear[s] on an essential element of the plaintiff's claim."  *Abraham v. Raso*, 183 F.3d

279, 287 (3d Cir. 1999).  A genuine issue of material fact exists "if the evidence is such

that a reasonable jury could return a verdict for the nonmoving party."  *Josey v. John R.*

*Hollingsworth Corp.*, 996 F.2d 632, 637 (3d Cir. 1993) (quoting *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  In examining the record before it, the court is

"required to view the facts and draw inferences in the light most favorable to the

nonmoving party."  *Ray v. Twp. of Warren*, 626 F.3d 170, 173 (3d Cir. 2010).  With

cross-motions, this means that the court will alternatively view the facts and draw

inference in the light most favorable to plaintiff when addressing defendant's motion, and

in the light most favorable to defendant when addressing plaintiff's motion. *See Schlegel*,

269 F. Supp. 2d at 615 n.1.

The moving party bears the burden of informing the court of the basis for its

motion and identifying the portions of the record that show that there is no genuine issue

of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). More specifically,

under the Federal Rules of Civil Procedure,

> [a] party asserting that a fact cannot be or is genuinely disputed *must support the assertion* by: (A) citing to *particular parts* of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1) (emphases added). If a party does not cite to specific materials,

the court may, but is not obligated to, consider other materials in the record. *See* Fed. R.

Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider

other materials in the record."); Fed. R. Civ. P. 56(e).

"Where . . . the non-moving party bears the burden of proof at trial, summary

judgment is appropriate if non-movants fail to 'make a showing sufficient to establish the

existence of an element essential to [their] case.'" *In re TMI*, 89 F.3d 1106, 1116 (3d Cir.

1996) (quoting *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993)). Thus, in this case, the

party who bears the burden of proof at trial, 2401 Walnut, "must 'go beyond the pleadings

and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial.'" *Id.* (citing *Celotex*, 477 U.S. at 324). If 2401 Walnut fails to do so, summary judgment may be granted against it. Conversely, if American Express fails to show that there is no genuine issue for trial, summary judgment may not be granted in its favor.

## III.    Discussion

As discussed in this court's January 24, 2008, memorandum, whether the items allegedly taken were fixtures is resolved according to New York law.[2] (*See* Docket No. 65 at 7.) If they were fixtures, then they were transferred to and belonged to 2401 Walnut L.P., not American Express.[3] If they were not fixtures, then they were transferred to and belonged to American Express, not 2401 Walnut, by the terms of the SPA. If genuine issues of material fact remain with respect to the fixture inquiry, then this matter must proceed to trial. With one exception, that is the case for all claims.

### A.    Fixtures under New York law

By "fixture" the court means "any article of personal property which has become so affixed to the land that it becomes part of it." *J.K.S.P. Restaurant, Inc. v. Nassau*

---

[2] However, interpretation of the terms of the lease, as opposed to whether items described in the SPA were fixtures, is governed by Pennsylvania law. (Docket No. 94 at 9.)

[3] This court previously held that "American Express did not undertake ownership of any items that were fixtures of the Building at the time of the Stock Purchase Agreement's execution." (Docket No. 65 at 11.)

10

*Cnty.*, 127 A.D.2d 121, 130 (N.Y. App. Div. 1987). As this court has previously noted, this is a fact-specific inquiry. "[T]he test to be applied to determine whether goods are fixtures requires (1) the actual attachment of the goods to the real estate, (2) the adaptability of the goods to the use for which the real estate is appropriated, and (3) the intent that the annexation be permanent." *Norstar Leasing Servs., Inc. v. Colonie Coliseum Enters., Inc.*, 546 N.Y.S.2d 942, 944 (N.Y. Sup. Ct. 1989). Moreover, "general and otherwise controlling principles may be avoided by agreement and the character of personal property as such be maintained in spite of circumstances which without such agreement would turn it into real property." *People ex rel. Interborough Rapid Transit Co. v. O'Donnel*, 202 N.Y. 313, 319 (1911)*; see also* 59 N.Y. Jur. 2d Fixtures § 8 (2d ed.) (citing *Interborough*, 202 N.Y. at 319). Thus, even if an item meets all three requirements and would ordinarily be deemed a fixture, an agreement between parties can override the general rule.

In order to establish the first element, actual attachment to the real estate, the evidence in the record must be sufficient for a fact-finder to conclude that the items at issue were physically attached or "constructively annexed" to the property. 1 N.Y. Law & Practice of Real Property § 1:13 (2d ed. & Supp. 2010). That said, "the mere fact that articles are firmly attached to the floor does not render them fixtures [because] they may have been so attached merely to maintain their stability." *Id.* § 1:14 & n.60.

In order to establish the second element, adaptability to the use for which the real

estate is appropriated, the evidence of record must be sufficient for a fact-finder to conclude that the items were both fit for the particular purpose of the real property and necessary for complete use of the real property. *Id.* § 1:13.

Finally, in order to establish the third element, intent that annexation be permanent, the evidence needs to be sufficient to allow the finder of fact to "infer[] from the *nature* of the article affixed, the *relation* and *situation of the party* making the annexation, the structure and mode of annexation, and the purpose or use for which the annexation has been made" that the party making the annexation intended "to make the article a permanent accession to the" real property. *Id.* § 1:13 n.55. Permanent does not mean perpetual, however, and each case depends upon its own facts. *Id.* § 1:16.

For summary judgment to be granted as to any item in dispute, there must be no genuine issue of material fact as to any of the three elements in the fixture test. Thus, if there is inconclusive evidence as to what an item was or whether it was attached to, adapted for, and intended to be made part of, the Building, then summary judgment must be denied.

**B.     Whether the items alleged are fixtures**

Plaintiff has restricted its claims to five categories of items alleged to be fixtures improperly taken from the premises: (1) kitchen and cafeteria items; (2) theater items; (3) workstation areas; (4) health club items; and (5) signage. All other claims have been withdrawn, and the court therefore deems them abandoned and will not address them.

The court must independently examine each of the five categories of items alleged by 2401 Walnut to be a fixture and determine if there are genuine issues of material fact as to whether the three elements articulated above are satisfied.[4] Furthermore, in accord with this court's February 18, 2009, opinion and order, for either party to be granted summary judgment, sufficient evidence must be produced to allow the court to "determine the identity of each of the contested items" in each category. (Docket No. 94 at 17.)

In support of its motion for partial summary judgment, defendant has submitted voluminous records, including hundreds of pages of fixed asset lists. It relies heavily on those fixed asset lists. American Express has also produced emails, presentations, and declarations from employees describing their version of the events surrounding American Express's departure from the Building.

In support of its cross-motion for partial summary judgment on these five categories of items, plaintiff refers to the following: (1) the July 16, 2008, declaration of Charles Block and associated exhibits ("2008 declaration"); and (2) the Sept. 2, 2010, declaration of Charles Block and associated exhibits ("2010 declaration"). The 2008 declaration was already deemed by this court to be insufficient to determine whether the items were fixtures, and alone they cannot warrant summary judgment in plaintiff's favor. (*See* Docket No. 94 at 16.) The 2010 declaration adds an expert report, engineering

---

[4] Although various statements from agents of both parties refers to items as "fixtures" in their affidavits and other documents, their colloquial use of the word "fixture" does not determine whether the items are fixtures under New York law.

schematics, and additional photographs as exhibits.  (*See* Docket No. 122.)  Beyond that, plaintiff has done little to follow up on the court's request for additional evidence concerning the identity of the fixtures.[5]

### 1.    Kitchen and Cafeteria items

Plaintiff continues to rely almost exclusively on the 2008 declaration and the attached photographs in support of its kitchen and cafeteria claims.  (*See* Docket No. 120 at 19–22.)  The primary new argument and evidence provided is a single paragraph referring to an expert's report on fixture replacement and associated exhibits that purport to be building schematics used to construct the kitchen and cafeteria areas.  (*Id.* at 20 (citing Docket No. 122, Exs. A & D).)  This, however, is not enough to warrant summary judgment in plaintiff's favor.  The expert report itself does not provide any evidence as to what, if any, items were fixtures improperly removed by defendant.  Quite the contrary, it assumes that items were improperly removed fixtures and then bases an estimate of replacement cost upon that assumption.  Moreover, plaintiff's assertion that defendant "paid $10,500 to remove the fixtures from the kitchen and cafeteria area . . . including

---

[5] An example of plaintiff's failure to adduce evidence can be found in an answer to an interrogatory in April 2009 after plaintiff's own witness had indicated that further discovery was required.  (*See* Docket No. 94 at 16; Docket No. 92 at 5.)  When asked to "[i]dentify all fixtures which Plaintiff claims American Express removed from the Building, as alleged in paragraph 12 of the Complaint," plaintiff referred to only the July 2008 declaration, already deemed insufficient by the court, as "a document responsive to this request from which the answer may be derived or ascertained."  (Docket No. 116, Murray Aff. Ex. B at 1.)

'defit/dispose of walk in freezer'" is at most, upon consulting the underlying document,

evidence that establishes a genuine issue of material fact in light of the "(Optional)"

characterization of the freezer removal, and the lack of any evidence that the items

removed were, as plaintiff alleges, "fixtures." (*See* Docket No. 122-29 at 2 (2010 Decl.

Ex. H at AMEX54632).) The building schematics, too, do not warrant summary

judgment in plaintiff's favor. While they might show the kitchen and cafeteria items that

were planned for installation in 1993 (*see* Docket No. 122, Ex. D at 5), there is scant

evidence in the record that establishes whether the items were present at the time of the

SPA and the lease, nor is there conclusive evidence as to the nature of the items to

determine whether they are fixtures. At most they preclude the entry of summary

judgment against plaintiff, but they do not compel the entry of summary judgment in

favor of plaintiff.

Defendant argues that it is entitled to summary judgment because the fixed asset

lists show that any kitchen items were transferred to American Express. However, the

items on the fixed asset lists are denoted only by three entries vaguely termed "Kitchen

Equipment," and they do not, when taken in the light most favorable to the non-moving

party (now the plaintiff), conclusively resolve all issues of material fact. It is impossible

to glean from the description "Kitchen Equipment" what items are included.

Furthermore, while there is inconclusive evidence that a walk-in refrigerator was

removed, there is also little evidence that it was not. Simply put, defendant's assertions

may cast doubt on the strength of plaintiff's case, but defendant has not demonstrated that there are no genuine issues of material fact. Defendant is therefore not entitled to summary judgment on claims related to the kitchen and cafeteria items.

Like the record before this court in February 2009, this court cannot determine what the kitchen and cafeteria items are and whether they are fixtures. The cross-motions for summary judgment are therefore denied as to these items.

### 2. Theater items

Plaintiff continues to rely on its 2008 declaration to support its third motion for partial summary judgment on the theater items. (*See* Docket No. 120 at 22–24.) The only additional submissions in support of its argument are an expert report on replacement cost and building schematics. Plaintiff has also not complied with Rule 56(c)(1) and identified the "particular parts of materials in the record" with respect to the schematics, instead citing generally to exhibits C, E, and F of the 2010 declaration. These exhibits span 29 pages of detailed engineering schematics with *no explanation whatsoever* to the court as to what should be divined from the drawings—indeed, it is not clear to the court where in these schematics the alleged theater items appear. Contrary to plaintiff's assertion, it is far from "easy to determine the fixtures utilized in that space" from the "[s]chematics of the theater area," and accordingly, once again the court denies plaintiff's motion for partial summary judgment as to the theater items.

Defendant, for its part, has made only general citation to the hundreds of pages of

fixed asset lists regarding the alleged items in the theater. (*See* Docket No. 116–1 at 14;

Docket No. 123 at 9–10.) Contrary to Rule 56(c)(1), defendant did not support its

assertion that the items were all transferred to American Express as part of the SPA with

citations to "particular parts of materials in the record." This court is not required to

comb through the thousands of items on the lists to determine what, if anything,

corresponds to the alleged theater items. Moreover, the photographs and deposition

testimony[6] do not conclusively establish one way or another whether the theater items (in

particular the pedestal chairs) were fixtures or not. (*See* Docket No. 116-17 at 19 (Pratta

Dep. at 37:8–38:4).) At best they establish a genuine issue of material fact because the

court is still in the dark as to the precise nature and identity of the contested items. As

such, defendant's motion for partial summary judgment with respect to the theater items

is denied.

### 3. Workstations

Plaintiff again relies on its 2008 declaration that this court deemed insufficient to

---

[6] Emblematic of the parties' noncompliance with Rule 56(c)(1), defendant has unhelpfully cited to 44 pages of Diane Kwon's deposition transcript instead of identifying the particular part in which she is questioned specifically about the theater. (*See* Docket No. 116-1 at 9 (citing to "Kwon Tr. 30:1–73:25").) The purpose of discovery is not for parties to dump disorganized documents on the court to be sorted out by the judiciary; parties are expected, indeed required, to use discovery to put forth their case in an intelligible fashion. Nevertheless, pursuant to Rule 56(c)(3) the court has conducted its own inspection of the Kwon deposition testimony and has found only one brief mention of a theater in its 44 pages. (*See* Docket No. 116-16, Kwon Tr. 42:8–43:4.) This brief mention says nothing about the character of the theater items sufficient to eliminate all genuine issues of material fact as to whether the items were fixtures.

warrant summary judgment.  (*See* Docket No. 120 at 24–25.)  To this, it adds additional photographs, schematics, and a deposition transcript that states the workstations were attached to the floors and walls of the Building.[7]  Unfortunately for plaintiff, this is not sufficient to warrant granting summary judgment in its favor.  First, "the mere fact that articles are firmly attached to the floor does not render them fixtures" under New York law because "they may have been so attached merely to maintain their stability."  1 N.Y. Law & Practice of Real Property § 1:14 & n.60.  Second, the additional photographs of workstations in both assembled and disassembled form do not conclusively establish the intent element of the fixture test.  There is sufficient evidence in the record for a reasonable fact-finder to conclude that the nature of the workstations, the structure and mode of annexation, and the purpose for which the annexation had been made do not evince an intent to make the workstations permanent additions to the real property.  *See id.* § 1:13 n.55.  Third, the schematics are evidence of the positions of the workstations, but the schematics are not conclusive of whether the items were fixtures or whether they were even in the Building at the time the lease commenced.  Plaintiff's motion for partial summary judgment on the workstations is therefore denied.

Defendant claims that "the fixed asset lists produced by American Express list numerous items of workstations that were transferred to American Express."  (Docket No.

---

[7] Plaintiff has again included an expert affidavit with respect to replacement cost, but this is not evidence of whether the items were fixtures in the first place.

116-1 at 14.) To support this assertion, defendant cites generally to the hundreds of pages of fixed asset lists attached to the Kwon and Ricciuti declarations, with a few specific references to particular items. (Docket No. 123 at 10.) The court notes that most of these entries do not correspond to items in the Building. (*See, e.g.*, Ricciuti Decl., Ex. B at AMEX10410 ("79 Workstations & chairs" and "20 Steelcase workstations" are associated with Linton, ND, not Philadelphia, PA); *id.* at AMEX10413 ("Furniture Workstation" located in Wilmington, DE, not Philadelphia, PA).) Others are not associated with any particular location. (*See, e.g.*, *id.* at AMEX10413 ("Workstation-Wdgwood w/Gry" location listed as "#N/A").) The entries in the fixed asset lists, even if undisputed, are insufficient to dispel all issues of material fact with respect to the workstations, and defendant's motion for partial summary judgment as to those claims is denied.

### 4. Health Club

The sole new evidence in addition to the insufficient 2008 declaration that plaintiff submits in support of its claim that fixtures were removed from the health club area is in the form of four photographs. (*See* Docket No. 122, Ex. I.) These photographs show some pieces of exercise equipment and some lockers, but they are wholly insufficient to determine conclusively the nature of the missing items, or even the full extent of the missing items. A conclusory assertion by plaintiff's expert of replacement costs also does not establish the nature of any of the items alleged to have been removed. The record

currently before the court on this claim is practically indistinguishable from the record before the court when the last motion for summary judgment was denied. Thus, plaintiff is not entitled to summary judgment on the health club items.

Defendant argues that it should be granted summary judgment on the health club claims because the items are covered by the fixed asset lists, and the equipment shown in the pictures cannot be considered fixtures. The court disagrees. The fixed asset lists do include items termed "Locker Room" and "Training Room" (*See* Ricciuti Decl., Ex. B at AMEX10347; Kwon Decl., Ex. F at AMEX 54817), but like "Kitchen Equipment," these terms are not sufficiently specific to indicate whether they include fixtures that are alleged to have been improperly removed from the Building. For example, unlike the countless entries in the fixed asset lists regarding individual computers and individual electronic devices, there are no entries regarding the individual items in the health club (such as "stationary bike," "mirror," or "treadmill"). Once again, the court cannot, on the basis of this record, determine the identity of the contested items. Accordingly, defendant's motion for partial summary judgment with respect to the health club items is denied.

### 5. Signage

Lastly, plaintiff alleges that American Express improperly removed Rosenbluth's building signage from the exterior and the interior of the building. Both parties move for summary judgment on the signage claims.

With respect to the exterior signage, the Headquarters Lease Agreement

unambiguously gives American Express, the lessee, the right to remove "any sign bearing the name of the existing occupant [Rosenbluth]" on the outside facade of the building. Lease § 8(c) (Docket No. 83, Ex. B., at 6). "Such an agreement is enforceable as between the parties to the lease and supersedes the general rules of law in this regard." *J.K.S.P. Restaurant*, 127 A.D.2d at 127–28. Thus, even assuming that the exterior signage was a fixture, the parties' agreement superseded that understanding and permitted removal of the signage. In addition, American Express points to undisputed entries in the fixed asset lists that establish that signage was transferred from Rosenbluth to American Express. (*See* Kwon Decl., Ex. F at AMEX54825 ("Two Signs" and "Rosenbluth Signs"); Ricciuti Decl., Ex. B. at AMEX10302 & AMEX10415 (item #7564 "Two signs"; item #7609 "Rosenbluth Signs"); *see also* Docket No. 83 Ex. O, Signage 1, 2, & 3 (photos of external signs).) In light of the unambiguous terms of the lease and the undisputed fixed asset lists, partial summary judgment is granted in favor of American Express on the external signage claims.

With respect to the interior signage,[8] plaintiff failed to identify any name plates in the interior aside from a conclusory, unsupported assertion in its briefs and an affidavit. (*See* Docket No. 120 at 27 n.6; Murray Decl. ¶ 36, July 16, 2008; Docket No. 83, Ex. M (no entries of "name plates").) Under Rule 56(c)(1), 2401 Walnut must produce evidence

---

[8] Although the Second Amended Complaint refers generally to internal signage, 2401 Walnut's present motion for summary judgment focuses almost exclusively on name plates. (*See* Docket No. 120 at 27.)

demonstrating the existence of a material fact beyond conclusory statements, and it has failed to do so. Indeed, even after considerable discovery and three motions for summary judgment, plaintiff has not drawn this court's attention to so much as a picture of the purported internal signage. (*Cf.* Docket No. 83, Ex. O, Signage 1-23 (all photos are of exterior, not interior, signage).) On the other hand, defendant has not produced anything to counter the reasonable inference, based on the finding that the internal signage *left behind* were fixtures, that the internal signage allegedly *removed* were also fixtures.[9] Thus, the court is again left unable to conclude whether the allegedly removed signage were fixtures, and the cross-motions for summary judgment on the internal signage claims are denied.

## IV. Conclusion

Even after the court specifically directed the parties to identify each contested item, followed by months of subsequent discovery, there is still inconclusive evidence regarding the identity of the items purported to be fixtures and allegedly removed (save for the external signage). Furthermore, the parties' bad habit of dumping on the court

---

[9] This court's January 2008 memorandum order accepted American Express's representation that the internal signage and name plates it was alleged to have *left behind* (*see* Am. Compl. ¶ 11 (Docket No. 21)) were fixtures it was not required to remove. By contrast, the court's February 2009 memorandum order noted that for internal signage and name plates allegedly *removed* (Second Am. Compl. ¶ 12 (Docket No. 68)) there was insufficient evidence to ascertain whether the removed items were fixtures. The two rulings exemplify the difficulty the court has in granting summary judgment on this record to either party with respect to the internal signage.

hundreds of pages of documents with conclusory arguments and only minimal explanatory citation to specific evidence of record does little to elucidate the issues in this case.  Thus, the court cannot determine whether these items were indeed fixtures, nor can it determine whether they were, in fact, improperly removed by defendant.

The record consists of nothing more than accusations and denials from various agents of the parties as well as inconclusive documents, and even after extensive discovery and multiple cross-motions for summary judgment, the parties are unable to demonstrate that there are no triable issues of material fact.  Accordingly, the cross-motions for summary judgment of plaintiff and defendant regarding the allegedly removed items are denied (save for the external signage claim) and this matter will proceed to trial.